Ready for argument now in the case of Raddant v. Douglas County. Mr. Corr. Thank you, Your Honors, and may it please the Court, I'm an attorney for the petitioner Christopher Raddant. Mr. Raddant is the alleged victim of excessive force, where he was, the allegation is that he was thrown into a concrete bunk headfirst, and that he, the allegation is that he suffered traumatic brain injury, a labral tear that required surgery in his shoulder. He had, just two weeks before this, had had a surgery on his wrists, that surgery had to be redone, and he also suffered PTSD. The case was dismissed, at least part of the case was dismissed as summary judgment by the District Court. The issue was, for the District Court, was that there was a video that captured some of the events of the evening when Mr. Raddant was arrested, and that was the grounds for summary judgment for most of the case. Mr. Corr, for the purposes of qualified immunity, which specific acts by the officers would you say were so far outside of the range of acceptable use of force, that the officers would have had reason to know that their actions were illegal? Well, Your Honor, I think it goes to the totality of the circumstances. When the Graham v. Conner, the really seminal case and excessive force cases that we all know, there are many factors here that are at play. One of the issues here is the actual underlying offense that Mr. Raddant was alleged to have committed. He was driving a vehicle in violation of a probation. This was a nonviolent offense. He was handcuffed at the time, behind his back. He was not a flight risk. He had been taken through locked doors into the booking area. In the booking area, there was a jail. There was an officer, not only an arresting officer, but there were also two other jail deputies there. This was a very secure facility. He had to go through a locked sally port to even get into the booking area. And then he was taken through a booking area, threw it down a hall, and they were receiving stuff. So the very secure facility, and that's one of the issues, is not only how many officers were involved. There were five officers that were involved in this case. Which specific acts, which specific acts by the officers are you, you know, if you could? Help me. Yes. So there are a couple, and this is where, there are actually two videos in this case. One video is in the booking area that I mentioned, and there's another video in the receiving cell. The booking area video actually has better quality, has audio. The video in the receiving area has no audio. It's very grainy. But in the booking area, the alleged act is that basically Mr. Raddant, after having asked numerous times that his handcuffs be basically released or loosened, he was taken by the hands and forcibly, forcibly taken by his arms. He was refused, the officers were refused every request to remove or loosen the handcuffs. But that claim went to trial. That was part of it, but that actual allegation continued into the receiving cell. He still had the handcuffs on when he was taken down the hallway and even the receiving cell as well. So I don't believe, I think it was an error for the court to try and differentiate. The district court basically created three discrete steps or stages in the case as far as the force that was used. One in the booking area, one in the hallway, and one in the receiving cell. But to get back to the totality of the circumstances in this case, one thing that's very, very relevant in this case is that in the booking area, in the audio from that video, you can hear one of the officers actually tell Mr. Raddant, you better stop or you're going to go on the floor. You're not going to go down gently either. That statement to me is an intent, it shows intent on the part of the officer because moments later, Mr. Raddant was then taken into the receiving cell and thrown into a concrete bunk. The allegation, our allegation is that one of the officers, not only did they take up one of his legs at the time, they also, there's a mattress that had been a slippery mattress that was on the concrete bunk. Our allegation is that that mattress was thrown off just before Mr. Raddant was then thrown into this concrete bunk. So yes, the allegation of the handcuffs was in the booking area, the court allowed to go through as far as to trial in the booking area, but the far more egregious and more violent actions of the officers was in the receiving cell, and that was excluded. And this goes again to the totality of the circumstances, even the injuries are part of the element of what proves an excessive force case. How seriously someone is injured, the judge granted motions of limity that basically kept out every doctor I called. We had already done the trial depositions of three doctors and a vocational expert that relied on those doctors' opinions. The judge kept excluded at all. If we affirm the court on the exclusion of the experts, can you prove causation? If the case is allowed to proceed as far as the receiving cell, then yes, I think we can. How would you prove causation? Are there other experts? Meaning causation that the... That the officers' actions caused the injury. So assume you're right on the excessive force, just for purposes of this question. But you're wrong on all of the expert issues. If we were to affirm the district court on those expert decisions, can your claim about the receiving cell go forward? Or can you not prove causation? Well, we wouldn't be able to prove the causation as far as the medical treatment. But I think Mr. Bredan would be able to testify regarding his injuries. He can certainly testify about his injuries, but how would you prove that these officers caused those injuries if you don't have those experts? I don't know if you have other experts. Well, that's why the doctors' opinions were critical. I do think you do need to have a doctor testify as to the causation of the injuries caused by what happened. And the exclusion of those doctors was in part, a large part... It seems to me if you lose on the doctors, that you lose the case. Because you couldn't prevail on causation as to the excessive force. Well, I think you can always seek nominal damages even if there is no medical treatment. But causation is an element of the claim. So I think that the jury could find that based on Mr. Bredan's testimony that yes, he was injured. In fact, the judge did allow Mr. Bredan to testify regarding his injuries. Again, it's not injury, it's causation. Yeah, but as far as the causation of the injuries, I think Mr. Bredan's testimony can lay the foundation for... His friends, experts, and his proposed trial exhibits were only relevant to the issue of damages for the claims against Libby and Larson, right? And those went to trial. I guess the experts were expected to testify about injuries that he supposedly obtained when they failed to loosen his handcuffs in the booking area and allegedly twisted his shoulder while frisking him in that area. But the jury concluded these things didn't happen. So any damages would become irrelevant. And you didn't challenge the jury's verdict in the appeal. So I'm wondering, you know... So we're talking about two different things. As far as what the jury... The motion for summary judgment that basically took out all the allegations as far as what could be proven as far as what happened in the receiving cell, which, again, were the more significant problem that we had in the case, the more significant allegations arose from that. That was excluded. And then a month or so later, then the motions to eliminate were granted. And we can't have a fair trial in the case without having the doctor's opinions actually go to the injuries, which, again, are one of the factors that go into play when a judge or jury makes a decision about whether excessive force occurred. The severity of the injuries are an element here. And, in fact, defense counsel in closing argument made a very... One of their biggest arguments was they kept... They pounded on the fact that there was no medical testimony. There were no medical records showing any kind of injury. So how could there have been excessive force? By excluding that based on... And I want to remind the court of the reasons why that motion was eliminated or granted. It was granted because the district court felt that the video showed that there could not... That what happened in the receiving cell was inadmissible. And when that was inadmissible, then it... Watkins was not allowed... Dr. Watkins, in particular, was not allowed to testify because the receiving cell had been removed by the summary judgment order. Dr. Hoxie, he said he couldn't... The allegation was he couldn't determine the exact cause of a neuroma. And, therefore, the judge excluded all of his testimony, felt it was not an expert opinion. The district court felt that even though the doctors all gave opinions to a reasonable degree of medical probability and based their opinions on the self-reported history of the patient, that was inadequate. And that that was not the proper standard. The district court found you hadn't disclosed them. The district court found that these doctors were more than treating physicians, that they were actually giving opinions about causation, and you had failed to disclose them as experts. That actually was not part of the judge's decision. If you read the decision, it was not based on a Rule 26 violation. It was based on, again, the... for Watkins, that there was not allowed to testify because the receiving cell had been removed by the summary judgment order. Hoxie, because they couldn't determine the exact cause of the neuroma, even though Dr. Hoxie testified to a reasonable degree of medical probability, the gold standard by which all doctors, all physicians testify in any case regarding injury. And the case law is that you can have a condition, maybe it can have many causes. We only had to prove that the incident was a cause by reasonable degree of medical probability, which we did, but the judge excluded the testimony because the judge felt there needs to be... it has to be the sole cause. And that's not... it was inappropriate grounds to exclude all the doctors' testimony. There was also a physician, Barney, who the judge found... The judge also found that Watkins was not properly disclosed as a retained expert, and he was giving expert opinions, even though he was the treating physician. Okay, well, as we cited in our brief, treating physicians are not expected to have the same kind of level of working with a plaintiff's counsel, and they're not required to have every opinion in their 26A disclosure. Treating physicians, if they give a causation opinion that was outside the course of their treatment, they do have to... they become an expert, and you have to disclose it. The law is crystal clear on that, and the court found you hadn't disclosed him as a retained expert, even though he was giving this retained expert opinion. Well, we did provide a report, and it is within the grounds of the court to be able to hear... treating physicians are given more laxity as far as their compliance... Not when it comes to causation opinions that were not part of their treatment. They're still required to comply with the rules on disclosure. Well, again, we believe that this... even Schuyler was excluded. Again, these doctors' positions not being allowed to testify really affected the liability, not just the damages aspect of the case. And the judge... part of the judge's ruling was excluding them was because he felt that they did deal just the damages and didn't have to be bearing on liability when, in fact, they didn't. So that is another grounds for why there should be a reversal of the case. I also wanted to mention there's a... Are you appealing the judge's ruling as to Officer Libby regarding the mattress incident? Because your brief really focuses on Larson, and Libby was not in the room. So it was unclear to me if you were appealing the decision as to Libby for the mattress incident in the cell. We're not contending Libby had anything to do with the mattress incident. Okay. She wasn't even in the receiving center when it happened.  You generally say you're appealing it, but then your arguments are all about Larson. So you are not appealing the decision as to Libby regarding the mattress incident. Is that correct? We are asking for a new trial in reverse to the entire case because these issues that happened in the booking area, again, under the totality of the circumstances, they really affect what happened in the receiving area and vice versa. And so excluding half of what happened, maybe more than half of what happened, really affected even the liability determination as far as what happened in the booking area. So, yes, we do believe that the Court of Appeals can fashion a remedy here, and I think the only proper remedy in the case is to have a new trial. And this is, again, the video, coming back to the video, the Ferguson case, as I indicated, that's the main case that we're citing. In that case, we think that's the most appropriate case to follow, there was an officer in McDonough. He struggled to handcuff Ferguson who was moving. And that video is hard to tell.  Thank you. Ms. Mills. Good morning, Your Honors. May it please the Court. I am representing the Douglas County Appellees. I believe the plaintiff's case in this instance has two major flaws, and the first is that the way that it was pled and proceeded on was very amorphous and mixed together, and I see it even in the way that counsel has been focusing on the totality of the circumstances. I think that the district court did a good job in trying to clarify and untangle that by categorizing this incident into three separate sort of mini incidents so that the district court could get a better handle on what it needed to decide, especially because there were different people involved in each of these incidents. So in the booking area, we really just have a claim against two people, Larson and Libby. It was for failing to remove handcuffs and then failing to loosen them. The court did decide on summary judgment that the failure to remove them was not unreasonable. It did decide that there was potentially a question for a jury of whether failing to loosen them was unreasonable because Mr. Reddant was complaining about an infection on his wrist. That went to a jury, and they determined there was no liability. The court then looked at, it was actually about 10 seconds if you watch the video. There isn't video in the hallway, but you can kind of watch the timestamps. It's about 10 seconds between when Mr. Reddant was taken from the booking area to the receiving cell. That involved additional officers. May I stop you here because this is something I've been wondering about. How long is the hallway between the booking room and the receiving cell? I mean, we can see in the video the beginnings of the officer starting to take Reddant down the hall. And we can see the end when he is thrust into the cell. But is there anything in the record about how long he is in that hallway? What may have happened while the officers were leading him down the hall? So there is some detail in the record. There's nothing in the record that gives you any specific distance. So I can't say in feet or yards, but the timestamps on the video, which are on the same clock, if you will, it's about a 10-second walk. And so the other thing that we do know is that the officers were behind him. They did not lead him. They had, I believe one had a hand on one arm, one had a hand on another shoulder. And so they were behind him, walked behind him to the receiving cell, and that took just under 10 seconds. And so because that mini-incident, I'll call it, involved additional officers, I think that Judge Peterson correctly decided that that would be looked at as sort of a separate use of force, particularly because Mr. Reddant had at least originally argued that the officers, quote-unquote, dragged him by his handcuffs down that hallway. Unfortunately, there is not video of that hallway, but you can see as he begins to be escorted down that hallway, he is not being dragged. The officers remain behind him, and then you can see on the video when he arrives at the receiving cell, the officers are still behind him. Then when he gets... I'm sorry. I'm sorry. No, you finish, please. I was just going to say when he gets to the receiving cell, then that makeup of individuals who are interacting with him and using potential force changes again because Officer Libby joins them, but she's not involved. Only certain officers go into the cell. And then there's the allegations about lifting the leg to decentralize him, which ultimately he lands on the concrete bunk, but the mattress has slipped, and he hits his head. Can I ask you this, please? Why did they need to subdue him at all? Couldn't they have simply put him in a cell to cool off and sober up for a while? The issue here was that they were unable to complete their path search of Mr. Reddant, and so there was testimony at trial. Unfortunately, it's not in the appellate record, but the officers said that it is very common that, and I think most people who have handled excessive force in civil rights cases in the correctional setting are probably aware that even if an arrestee is searched by an officer on site, that search does not necessarily get to the nooks and crannies that jailers have to get to when they are searching somebody. They need to search for contraband. They need to search for weapons, just like the arresting officer. And so what they were doing was taking him to the receiving cell so that they could complete that path search, then remove the handcuffs and let him cool off, cool down. And, of course, they had an obligation not just to protect him from fleeing. I know counsel said that he was no longer a flight risk, which is, in all respects, a reasonable conclusion because he's in a locked facility, but he could still pose a risk to himself or to officers because they had not been able to complete that path search of him. They had, I believe, gotten through to his jacket, but there had not been any check of taking his shoes off, checking between the toes, no strip search, anything like that. They had not been able to complete that because of his resistance in the booking area. And so I think that Judge Peterson and the district court did a great job of kind of compartmentalizing those so that the proper analysis could be applied to each use of force and each person using force to determine what actions was each individual taking and did those actions fall outside of the range of acceptable conduct as established by our case law. There's no way that that proper determination could be made if we simply look at the event as if it's an incident from the minute that Mr. Redan stepped foot in the jail to the minute he hit his head on the mattress, particularly because one officer cannot be held responsible or liable for the actions of another. And so that type of, although it might seem sort of exacting, that type of very particular analysis is what is necessary to determine whether there was a constitutional violation. Did he hit his head on the mattress or on the concrete floor? It's my understanding that he hit his head on the concrete bunk. So as they were trying to bring him down, the mattress slipped. The allegation was that one of the officers purposely moved it out of the way. But in fact, it goes to one of the factors of excessive force that they did make the effort to temper any consequences of their force by putting the mattress down onto that concrete bunk to try to avoid injury to begin with. In the scuffle, the mattress slipped. There is no evidence that any officer purposely put their foot on that mattress and pulled it out of the way somehow. But he did hit his head. The video is a little hard to tell on that because everything is happening so quickly. An officer, Larson, walks in or moves forward and then the mattress slips. Yes. So there is certainly arguments from the plaintiff appellant that the video in this case does not meet the standard that would be required to eviscerate any factual dispute. And so that we would say that while the video is not perfect, and of course I always wish that jails had HD cameras and perfect crystal clear pictures, we also had the testimony through declarations of all of the involved officers to sort of buttress that and so to explain step by step what they were doing in relation to Mr. Reddant, in relation to the mattress, and in relation to each other. And they all explained that the mattress, I believe one of Mr. Reddant's feet was on it and that kind of motion slipped out. Now ultimately, even if the court were to assume that Officer Larson had his foot on the mattress and it accidentally slipped out, that still would not get to the level of a constitutional violation anyway because it would simply be the unattended and accidental effect of an otherwise reasonable use of force. But it was unfortunately the situation that the mattress did slip just enough that when he did come down, his head hit the concrete and he got a cut on his head. What about his own testimony that the officer intentionally pulled out the mattress? So the district court did look at that and confirmed that he had no foundational knowledge to be able to make that statement. Mr. Reddant's declaration testimony was the only support for that. Mr. Reddant stated in his deposition that he could not see what the officers were doing. He was not positioned in a way that would allow him to see that. And the court recognized that there was simply no way for Mr. Reddant to then say in a declaration after the fact that it was a purposeful motion of somebody's leg who he could not see and had no basis to make that statement. And so ultimately Mr. Reddant's claims about who moved the mattress, their purpose in moving the mattress, it was all completely speculative and there was no admissible evidence in the record that would allow that conclusion to be reached. And of course he was not following the orders to get on his knees. That's correct. Nor does he dispute that. That's correct. There is no audio, unfortunately, of the incident in the receiving cell, but it is clear from his body language that he appears to be resisting. I know that the argument had been made by the appellant that, well, he was just making motions or he was uncomfortable, something to that effect. Ultimately, though, the Fourth Amendment requires us to look at what a reasonable officer in the position of these individuals would have believed this individual to be doing. Based on the audio and video that we have of Mr. Reddant in the booking area, I think it's pretty clear that they were reasonable in believing that he was resisting. Whether he was or wasn't, him locking his legs, pushing back against them, swearing at them, yelling, telling them they should go get help, all of that supports the conclusion that this individual, who has not cooperated with him for the first 10 minutes of their encounter, his physical actions in the doorway of the receiving cell and then moving towards that concrete bunk, it would be reasonable for any officer in that position to believe he is resisting and some level of physical force needs to be used to get him onto the mattress, onto his stomach where we can safely remove those handcuffs and complete the path search of him. Ms. Mills, you've relied on the Fourth Amendment here, and I know the court below did. Should the Fourteenth Amendment apply here in light of Kingsley? Mr. Reddant was a pretrial detainee who had not had his probable cause hearing yet, and we have maybe a little bit of conflicting case law on whether the Fourth or the Fourteenth Amendment applies. In Kingsley, in a pretrial setting, the court said the Fourteenth Amendment applies. The person at issue there had not had a probable cause hearing yet. It had started, but it hadn't completed. So I don't know that it ultimately matters on what the test is, but should it be the Fourteenth or the Fourth? I agree that in this case, ultimately, it doesn't really make a difference one way or the other. I think in this case, because he had not had a probable cause hearing, he was actually not even completely booked into the facility. I think it was reasonable that the court decided, especially knowing that there wasn't going to be ultimately a difference in the standard as it applied, that the Fourth Amendment, he could be considered an arrestee. There were also some arguments as to whether he was actually fully in the custody of Douglas County Jail at the time that this happened, because the arresting officer was still there. Had the jail actually taken custody of him? Ultimately, though, I think all of those are really interesting questions, but I think that in this case, the Fourth Amendment would be an appropriate one to apply, given the facts, and it was somewhat of a unique circumstance. And then I did just want to touch on the issue of experts. These experts were all essentially asked the same question of, did the incident, quote, unquote, the incident of October 10, 2019, cause Mr. Redan's injuries? And I think that that is where a lot of this ambiguity and vagueness comes back in, as applied to the evidence of expert causation in this case. These experts responded in letters, and although they were treating physicians, they did respond and state, yes, I believe that the incident of October 10, 2019, caused these injuries. But of course, as I said earlier, this wasn't one identifiable act or action of one or two individuals. This was 20 minutes involving multiple different people and multiple different allegations of physical action that were allegedly excessive. And so in a situation like this, when you have an expert who simply says, well, yes, my treatment of this individual was related to injuries caused by that incident, it is simply, it lacks the requisite foundational basis to connect any individual's conduct to the alleged injury. As the gatekeeper, the district court cannot simply say, well, this could potentially be relevant, or I'm not sure. The district court did exactly what it needed to do. It looked at the reliability and the foundation of those opinions first, determined that they were not reliable and excluded them, also for the reasons discussed earlier with the failure to disclose them as retained experts as opposed to treating experts. But in this case, that sort of ambiguity and bleeding from one thing to another, grouping everything together, truly meant that these experts would not have been able to offer anything relevant, probative, or helpful to the jury. I thank you. Thank you, counsel. The case is taken under advisement.